## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**FLORENCE MIRABAL,**

　　　　　Plaintiff,

vs.                                          Civ. No. 04-983 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

　　　　　Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed December 10, 2004.  Docket No. 7.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is not well taken and will be denied.

### I.  PROCEDURAL RECORD

Plaintiff, Florence Mirabel, applied for Social Security disability insurance benefits on August 8, 2002.  Tr. 75.  Plaintiff alleged she became disabled on July 29, 2002 due to rheumatoid arthritis. The Administrative Law Judge ("ALJ") held a hearing on June 18, 2003.  Tr. 207.  On July 24, 2003, the ALJ issued a decision finding at step 5 that Plaintiff was not disabled.   Tr. 47.  On August 4, 2004, the Appeals Council denied Plaintiff's request for review.  Tr. 5.   Plaintiff subsequently filed her Complaint for review of the ALJ's decision on September 1, 2004.

Plaintiff was born on January 25, 1975.   Tr. 75.  She has a high school education and past

1

relevant work experience as jewelry salesperson and a bingo caller.  Tr. 45.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Sisco v. United States Dep't. of Health & Human Servs., 10 F.3d 739, 741 (1993).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments

severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

The first medical record regarding Plaintiff's impairment is dated  March 19, 2002.  Plaintiff saw Don Ortiz, M.D., who noted that her laboratory results showed normal rheumatoid factor and sediment rate.  Tr. 185.

Plaintiff saw Jacqueline Dean, M.D, a rheumatologist on April 16, 2002.    On physical examination, Dr. Dean noted that Plaintiff had 2+ swelling and tenderness in both hands, had tenderness in her hips, and had 1+ swelling in her knees.  Tr. 145.  Dr. Dean diagnosed Plaintiff with rheumatoid arthritis.  Id.  On April 23, 2002, Plaintiff underwent an x-ray.  The x-ray showed "[e]ssentially normal appearance of the bilateral hands and feet.  No overt radiographic evidence of rheumatoid arthritis at this time.   Bilateral calcaneal spurs."  Tr. 147.

In May of 2002, Dr. Dean noted that Plaintiff had "done remarkably well with Vioxx."  Tr. 144.  She further noted that Plaintiff's "[x]-rays did not show any rheumatoid damage and her screening laboratories looked good."  Tr. 144.  In July of 2002, Plaintiff reported that her insurance refused to refill her prescription for Vioxx.  She was taking Prednisone to help with the stiffness and pain.  On August 7, 2002, Dr. Dean noted that Plaintiff had "swollen, painful and stiff joints in the hands, knees and the small joints of the feet, reduced grip strength and severe fatigue."  Tr. 142.  She

further noted that "[a]ll of these are made worse by working."  Id.

Plaintiff continued to seek treatment from Dr. Dean through early 2003. Dr. Dean continued to note tenderness, stiffness and swelling.  Tr. 140, 178.  On March 14, 2003, Dr. Dean completed a questionnaire in which she opined that Plaintiff could work at most 4 hours per day, 4-5 days per week with a 5-10 minute break to stretch each hour.  Tr. 170.  She further opined that Plaintiff could occasionally lift 10 pounds.  Id.  She also opined that Plaintiff was limited to less than occasional use of both hands for simple grasping repetitively and less than occasional use of either hand for fine manipulation repetitively.  Tr. 172.

On May 23, 2003, Plaintiff saw Dr. Leroy A. Pacheco, a rheumatologist, who prescribed Vioxx and gave her sufficient samples for a couple of months.  Tr. 193.  He found she was tender but it was not related to any "active synovitis in her hands."  Id.

On September 19, 2003, Dr. David Green, a State Agency physician, found that Plaintiff could perform light exertional level work but needed to avoid working in the extreme cold.  Tr. 164.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred:  1) in his analysis under the Listings of Impairments; 2) in failing to give proper weight to the opinion of Plaintiff's treating physician; 3) in his assessment of credibility; 4) in finding that Plaintiff had the RFC for performance of light work; and, 5) in finding that Plaintiff could perform work that exists in substantial numbers in the national economy.  Plaintiff also asserts that she should be found disabled as a matter of law.

Listings of impairments.

The listing of impairments describes impairments that are considered severe enough to prevent

a person from performing any gainful activity.  20 C.F.R. §§ 404.1525(a), 416.925(a).  "For a

claimant to show that his impairment matches a listing, it must meet all of the specified medical

criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not

qualify."  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).  Plaintiff failed to meet her burden that she

met a Listing at step three.  <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984).

The ALJ specifically considered whether Plaintiff met the Listing  §14.09 Inflammatory

Arthritis.  Listing §14.09 requires, in relevant part, a

> "[h]istory of joint pain, swelling, and tenderness, and signs on current physical examination
> of joint inflammation or deformity in two or more major joints resulting in inability to
> ambulate effectively or inability to perform fine and gross movements effectively..."

The ALJ found that "[a]lthough the claimant consistently complained of joint pain, she did not display

joint deformity in two or more major joints that resulted in the inability to ambulate effectively or the

inability to perform fine and gross movements effectively as described in the Listings."  Tr. 43.

The ALJ applied the correct legal standard and his finding is supported by substantial evidence.

The regulations define the inability to ambulate effectively as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an
> impairment(s) that interferes very seriously with the individual's ability to independently    initiate,
> sustain, or complete activities.  Ineffective ambulation is defined generally as                h a v i n g
> insufficient lower extremity functioning (see 1.00J) to permit independent ambulation       without the
> use of hand-held assistive device(s) that limits the functioning of both upper            extremities. 20
> C.F.R. Pt. 404, Subpt. P, App. 1, §1.00B(2)(b)(1).

There is no evidence that Plaintiff cannot ambulate effectively as defined in the regulations.  The

record demonstrates that Plaintiff did not use assistive devices to walk.  Tr. 97.  Furthermore, in

March of 2004, Dr. Dean, reported that her examination of Plaintiff's lower extremities was

"unremarkable."  Tr. 199.  Dr. Dean did not mention in her treatment notes that Plaintiff was limited

in her ability to walk.  Tr. 139-46.  The only mention by Dr. Dean that Plaintiff's arthritis limits

Plaintiff's abilty to walk is in her response to a "Physician's Questionnaire."  Tr. 169.  Moreover, the

ALJ discussed that Plaintiff's daily activities included driving, shopping and some housework.  Tr. 44.


Plaintiff relies on Dr. Dean's opinion that Plaintiff's arthritis limits her ability to walk.  Brief,

p. 11.  However, as discussed below, this opinion was properly discounted by the ALJ.

The inability to perform fine and gross movements effectively is defined by the regulations as

follows:

> "Inability to perform fine and gross movements effectively means an extreme loss of motion
> of both upper extremities; i.e., an impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sustain, or complete activities.   20 C.F.R. Pt. 4
> Subpt. P, App. 1, § 1.00B(2)(c)."

Again, the record does not demonstrate an "extreme loss of motion of both upper extremities."  Id.

Rather, as noted by the ALJ, the record shows that the Plaintiff was able to perform simple activities

of daily living. The treatment records of Dr. Dean do not support an extreme loss of motion.  The

treatment records merely refer to stiffness and a "reduced grip strength."  Tr. 139-46 and 142.  Again,

Plaintiff relies on the opinion of Dr. Dean and asserts that Dr. Dean found that she could use her hands

for grasping and manipulation on less than an occasional basis.  Tr. 172.  Plaintiff has misstated Dr.

Dean's opinion.  Dr. Dean found only that she could use her hands on less than an occasional basis for

repetitive grasping and manipulation.  Tr. 172.  Moreover, as discussed below, Dr. Dean's opinion was

properly discounted by the ALJ.

Opinion of treating physician.

Dr. Dean was Plaintiff's treating physician.  On August 7, 2002, Dr. Dean found that Plaintiff

6

was "incapacitated and disabled."    Tr. 179.  Dr. Dean did not describe any clinical or laboratory

findings from which she derived her opinion concerning Plaintiff's limitations.  At step 4, the ALJ

found that Plaintiff had the RFC for a range of light work with the additional limitations of "avoid

concentrated exposure to cold, limitations to only occasional kneeling or crawling, only occasional fine

or gross hand movement with only intermittent writing."    Tr. 47.   This determination was not

consistent with the opinion of Dr. Dean.

      In discounting Dr. Dean's opinion, the ALJ wrote:

      Dr. Dean's opinion at Exhibit 6F, page 6, seemed to be based on the claimant's subjective
complaints, not on clinical data, which did not support the alleged level of pain.  Further,    Dr. Dean
was inconclusive in her assessment of how long Ms. Mirabal would be out of          work when she
wrote that it was "uncertain regarding any return to work," and any such    return to work was
dependent on the claimant's success in disease therapy.
      Most recent medical records are not supportive of complete disability.  Dr. Pacheco hoped
      that Vioxx 25 mg samples would "get the rest of her pain to resolve."  And laboratory
      testing ordered by Dr. Pacheco in January and February 2003 was largely within normal
limits (Exhibit 10F).

      Tr. 44

Thus, ALJ gave no weight to Dr. Dean's opinion that Plaintiff was disabled.  As required the ALJ give

specific and legitimate reasons for this finding.  Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003).

The ALJ cited to contradictory medical evidence and the inconsistencies between Dr. Dean's opinion

and her medical reports.  Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (ALJ may

resolve conflicting medical evidence).  Specifically, the ALJ's decision further states:

      "Don Ortiz, M.D. noted that laboratory results from February 19, 2002 showed normal
rheumatoid factor and sediment rate."  Tr. 42.

      "A radiology consultation on April 23, 2002 revealed no overt radiographic evidence of
rheumotoid arthritis." Id.

7

Dr. Dean started Vioxx as a "first line" of treatment and on May 7, 2002, Ms.     Mirabal reported that she was doing "remarkably well."  The claimant was not in constant pain, was less stiff and less swollen.  Ms. Mirabal reported "very little breakthrough pain."     At the May 7 examination, Ms. Mirabal had good range of motion with very little stiffness     in all joints. She had a trace of synovitis remaining in bilateral hands, although x-rays did     not show any rheumatoid damage and laboratory testing results were negative (Exhibit 1F,     p. 7).  Id.

Ms. Mirabel saw Leroy A. Pacheco, M.D., Board Certified Internal Medicine & Rheumatology, on May 23, 2003 (Exhibit, 10F).  The claimant reported continued morning stiffness that lasted a couple of hours, but denied any other acute complaint at the examination.  Dr. Pacheco added Vioxx 25mg to her mediation regimen, and gave her enough samples for a couple months.  Tr. 43.

"...laboratory testing ordered by Dr. Pacheco in January and February 2003 were largely within normal limits..."  Tr. 44.

As stated by the agency ruling on this matter "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."  SSR 96-20, 1996 WL 374188, at *2, see also 20 C.F.R. § 404.1527(d)(2).  Thus, the Court concludes that the ALJ properly discounted Dr. Dean's disability determination.

Credibility analysis.

The ALJ found that "the claimant's allegations of debilitating pain secondary to rheumatoid arthritis are not consistent with the clinical evidence of record and are therefore not wholly credible. SSR 96-7p."  Tr. 45.

Plaintiff contends that the ALJ did not  closely and affirmatively link his credibility finding to the evidence.  Hardman v. Barnhart, 362 F.3d 676 (10th Cir. 2004).  "So long as the ALJ sets forth

8

the specific evidence he relies on in evaluating the claimant's credibility," his credibility evaluation is

sufficient.  Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).   Credibility determinations are

within the province of the ALJ. Hamilton v. Secretary of HHS, 961 F.2d 1495, 1499 (10th Cir. 1992).

The ALJ's decision demonstrates that the ALJ properly considered Plaintiff's complaints.  The

ALJ considered Plaintiff's daily activities.  Tr. 44.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir.

1988).  The ALJ also properly considered his personal observations at the administrative hearing.

Qualls, 206 F.3d at 1373; Tr. 213; SSR96-7p ("In instances in which the adjudicator has observed the

individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis

of such personal observations, but should consider any personal observations in the overall evaluation

of the credibility of the individual's statements." )  Finally, the ALJ properly considered the fact,

supported by the record, that "her arthritis was treatable with Vioxx" and Dr. Dean's indication that

Ms. Mirabal had a "surprising response to Vioxx alone (Exhibit 1F, p.7)."  Tr. 44.  The ALJ further

noted that Plaintiff "reported that she could not sit for long periods of time due to her rheumatoid

arthritis, although that limitation was not documented in the medical record."  Tr. 44.  Plaintiff asserts

that the ALJ did not follow the policy outlined in SSR 96-7p.  However, Plaintiff did not point out

how the ALJ failed to follow this policy.  Moreover, the Court has reviewed this policy and finds that

the ALJ did not err and that substantial evidence supports his credibility determination.

Residual Functional Capacity.

The determination of a claimant's RFC is the extent to which the claimant's impairments and

related symptoms affect her capacity to do work-related activities.  SSR 96-5P (1996 WL 374183);

SSR 96-8p (1995 WL 374184).  An evaluation of an RFC is a decision by the ALJ of what a claimant

can do despite her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is not a medical assessment, but rather an administrative one.  20 C.F.R. §§ 404.1545(a) and 404.1546.

The ALJ found that Plaintiff retained the functional capacity for light work with additional restrictions that she avoid exposure to cold, limitations of only occasional kneeling or crawling, and limitations of only occasional fine or gross hand movement with only intermittent writing.  Tr. 45. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or        carrying of objects weighing up to 10 pounds.  Even though the weight lifting may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls."  20 C.F.R.§ 404.1567(b).

Plaintiff asserts that there is no evidence in the record to support this finding because the ALJ discredited the opinion of the state agency reviewing physician.  The ALJ wrote that Dr. Green's assessment "appears optimistic, in the absence of any functional allowance for her arthritis."  Tr. 43. Accordingly, the ALJ included additional limitations that took into account Plaintiff's arthritis.  There is support in the record for the ALJ's finding.  The ALJ properly found support of his RFC in the medical records of the Plaintiff's treating physician.  The Court notes that Plaintiff's argument that the ALJ disregarded all of Dr. Dean's records is without merit.  The ALJ rejected Dr. Dean's opinion, not Dr. Dean's treatment records.  Furthermore, the ALJ, not a physician, determines an individual's RFC based on all the evidence.  20 C.F.R. §§ 404.1545(a)(1); 404.1546(c) (2004).

Vocational expert testimony.

The vocational expert testified that Plaintiff could perform the light, unskilled job of shipping and receiving weigher, the light, unskilled job of rental clerk, and the sedentary, unskilled job of surveillance system monitor.  Tr. 233-35.  Plaintiff asserts that the ALJ relied on an improper

hypothetical because it included that Plaintiff could perform light work.  As previously discussed, there is support in the record for the RFC determined by the ALJ.  The hypothetical questions reflected Plaintiff's impairment and her limitations supported by the evidence in the record.  <u>Decker v. Chater</u>, 86 F.3d 953, 955 (10th Cir. 1996).

The hypothetical questions limited the vocational expert's testimony to jobs that require only occasional fine or gross manipulation.  This is consistent with the jobs of shipping and receiving weigher which require occasional reaching and fingering and the job of rental clerk which requires frequent handing and occasional reaching, fingering, and handling according to the <u>Dictionary of Occupational Titles</u>.

Finally, Plaintiff asserts that she has diminished concentration as a result of her pain and cannot perform the job of surveillance system monitor. The record does not support and Plaintiff has failed to establish deficits in attention and concentration.  To the contrary, Plaintiff reported she had no problem making decisions or concentrating.  Tr. 94.  Again, the hypothetical questions need only reflect the impairment and limitations in the record.  <u>Decke</u>r, 86 F.3d at 955.        <u>Plaintiff is not disabled as a matter of law</u>.

Plaintiff contends she is disabled under the Grids as a matter of law.  Plaintiff bases her argument on the Girds pertaining to sedentary work.  Memorandum in Support, p. 19; 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.12, 202.14 (2004).  Again the ALJ found and the record supports that Plaintiff  can perform light work with additional limitations.  The Grid rules for light work direct a finding of non disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.10-202.15.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is denied.

_____

**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**